# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KURT RILLEMA, an individual,

     Petitioner,

v.

BEAUREGARD MAXIMILLIAN
HARVEY, an individual

     Respondent.

_____/

Case No. 23-cv-12042
Honorable Jonathan J.C. Grey

### ORDER GRANTING MOTION TO COMPEL ARBITRATION (ECF No. 2), APPOINTING ARBITRATOR, DENYING AS MOOT THE OMNIBUS MOTION (ECF No. 17), STRIKING THE MOTION FOR SANCTIONS (ECF No. 18), STAYING THE JUDICIAL PROCEEDINGS, and ADMINISTRATIVELY CLOSING THE CASE

On August 11, 2023, petitioner Kurt Rillema filed a verified petition to compel arbitration (ECF No. 1), a motion to compel arbitration (ECF No. 2), and a motion for temporary restraining order ("TRO") and preliminary injunction (ECF No. 3). On August 14, 2023, the Court granted the motion for TRO. Respondent Beauregard Maximillian Harvey, formerly a licensed attorney in the state of Ohio appearing pro se in this matter, was served on August 16, 2023. (ECF No. 9.) The Court held a hearing on August 24, 2023, at which both parties appeared. On

August 28, 2023, the Court extended the TRO until September 11, 2023. (ECF No. 15.)

In the motion to compel arbitration, Rillema "request[ed] that the Court find [sic] grant his motion to compel arbitration and appoint Kara Tertzag as arbitrator for this matter." (ECF No. 2, PageID.139.) Harvey's response to the motion to compel arbitration was due on September 6, 2023, but no response was filed or received by the Court on or before September 6, 2023. Rillema nonetheless filed a reply brief on September 6, 2023, wherein he again asked that the motion to compel arbitration be granted but that the Court appoint former Third Judicial Circuit Court Judge David Groner to serve as arbitrator (rather than Kara Tertzag). (ECF No. 16.)

On September 7, 2023, Harvey filed two documents: (a) a "Motion to Strike, Motion to Dissolve Ex Parte TRO/Preliminary Injunction, Answer, Counterclaim, Defenses/Alternative Defenses, Request for Hearing" ("omnibus motion") (ECF No. 17); and (b) "Motion for Sanctions" ("motion for sanctions) (ECF No. 18).

The Court concludes that oral arguments would not aid in the disposition of the motion to compel arbitration, so it is basing its ruling

2

Case 2:23-cv-12042-JJCG-APP   ECF No. 21, PageID.493   Filed 09/11/23   Page 3 of 15

on the papers filed in this case (as well as some papers filed in a related case filed in the Northern District of Ohio). *See Kloss v. RBS Citizen*, 996 F. Supp. 2d 574, 590 (E.D. Mich. 2014) (courts may determine motions on the briefs without a hearing) (citing Fed. R. Civ. P. 78(b)); *Mohlong v. Long Beach Mortg.*, No. 12-10120, 2013 WL 827221, at *2 (E.D. Mich. Mar. 6, 2013) (stating that the Eastern District of Michigan LR 7.1(f)(2) gives discretion to the Court to decide motions without hearings). For the reasons that follow, the Court **GRANTS** the motion to compel arbitration, **APPOINTS** Judge Groner as arbitrator, **DENIES** Harvey's omnibus motion, **STRIKES** Harvey's motion for sanctions, **STAYS** these judicial proceedings, and **ADMINISTRATIVELY CLOSES THE CASE**.

## I.   BACKGROUND

Harvey and Rillema formed 522 Reynolds, LLC (the "Company") in February 2019. They executed an Operating Agreement governing the Company (the "Operating Agreement"). The Company owns a shopping center at 522-550 Reynolds Road, Toledo, Ohio. On May 30, 2023, Harvey sued Rillema in the Northern District of Ohio, alleging mismanagement of the Company by Rillema. (*Harvey v. Rillema*, N.D. Ohio, No. 3:23-cv-

Case 2:23-cv-12042-JJCG-APP   ECF No. 21, PageID.494   Filed 09/11/23   Page 4 of 15

1079, ECF No. 1.) On July 28, 2023, United States District Judge James R. Knepp II, Northern District of Ohio, granted Rillema's motion to dismiss, without prejudice. (*Harvey*, N.D. Ohio, No. 3:23-cv-1079, ECF No. 15.) Judge Knepp determined that the following arbitration clause in the Operating Agreement required dismissal of the case before him:

> 13. Arbitration
> Any dispute, controversy or claim arising out of or in connection with this Agreement or any breach or alleged breach hereof shall, upon the request of any party involved, be submitted to, and settled by, arbitration in the city in which the principal place of business of the Company is then located, pursuant to the commercial arbitration rules then in effect of the American Arbitration Association (or at any other time or place or under any other form of arbitration mutually acceptable to the parties involved). Any award rendered shall be final and conclusive upon the parties and a judgment thereon may be entered in a court of competent jurisdiction. The expenses of the arbitration shall be borne equally by the parties to the arbitration, provided that each party shall pay for and bear the cost of its own experts, including the attorney's fees of a party if the arbitrator expressly determines that the party against whom such award is entered has caused the dispute, controversy or claim to be submitted to arbitration as a dilatory tactic or in bad faith.

(*Id.*)

Once the Northern District of Ohio case was dismissed, Rillema promptly filed a verified arbitration demand to have Kara Tertzag arbitrate the parties' disputes. (ECF No. 2-5, PageID.257.) Rillema also

4

obtained an (undated) order from arbitrator Tertzag granting Rillema's motion for ex parte TRO. (ECF No. 2-6, PageID.265.) Harvey contested the arbitration, and Arbitrator Tertzag stayed that arbitration proceeding pending a determination whether arbitration is appropriate. On August 11, 2023, Rillema filed the instant case seeking to compel arbitration. Rillema now proposes that Judge Groner be appointed as arbitrator because Harvey allegedly has threatened to sue Arbitrator Tertzag. (ECF No. 16, PageID.448.)

## II.   ANALYSIS

### A.   Motion to compel arbitration

Harvey has not filed a response to the motion to compel arbitration in this Court. The Court notes, however, that Harvey did address the issue of whether the disputes at issue are covered by arbitration provision in the Operating Agreement during the related litigation in the Northern District of Ohio, as exhibited below. Harvey also generally contested Rillema's right to arbitration at the hearing held by this Court on August 24, 2023. Having reviewed the record, including the briefs filed in this Court and in the Northern District of Ohio, the Court finds the analysis by Judge Knepp in his July 28, 2023 Memorandum Opinion and Order to

be sound. (*See Harvey*, N.D. of Ohio, No. 23-1709, ECF No. 15, PageID #:

302-312; ECF No. 2-4, PageID.245-255.) For that reason, the Court

reiterates some of Judge Knepp's analysis here.

Judge Knepp stated:

> It is a basic principle that "[t]he party seeking arbitration must prove that such an agreement exists." *Bazemore v. Papa John's U.S.A., Inc.*, -- F.4th --, 2023 WL 4631540, at *1 (6th Cir.). If a genuine issue of material fact arises as to whether such an agreement exists, the court "shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 837 (6th Cir. 2021). In order to show that the validity the agreement is "in issue," the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

> Here, [Harvey] attached the LLC Operating Agreement to his Complaint, asserting violations thereof and relating thereto. See Doc. 1, at 4 ("A true and accurate copy of the Operating Agreement is attached hereto as Exhibit #1"); (Doc. 1-3) (Operating Agreement); (Doc. 10-1, at 7) ("There is no dispute that [o]n February 6, 2019, [Rillema] and [Harvey] entered into an Operating Agreement for the Company[.]"). . . . Relying on the arbitration clause in that same agreement, [Rillema] moves to dismiss to elect the arbitration provision. See Doc. 5, at 1.

> In opposition to dismissal, [Harvey] cites the violations he asserted in his Complaint (related to alleged mismanagement of the LLC, including failure to pay taxes, misappropriating funds, failing to comply with various terms of the Operating Agreement, etc.), and asserts this conduct "evidences intent to defraud"; he "requests a hearing on the

issue of whether the fraudulent conduct renders the Arbitration Clause void." (Doc. 10-1, at 8-9). [Harvey] further references and attaches a 2021 letter he says he received, written by an attorney on behalf of [Rillema]. *Id.* at 1, 4, 10; (Doc. 10-2). To the letter is attached a slightly different version of the Operating Agreement. (Doc. 10-2). [Harvey] argues "[t]his provides a completely different agreement that defendant Rillema claims as the original. [Harvey] can prove that this is a fraud. Thus voiding the arbitration agreement." (Doc. 10-1, at 1). He requests a hearing to, inter alia, "allow [Harvey] to inquire as to . . . the fraudulent operating agreement he provided to his counsel in an attempt to commit fraud in 2021." (Doc. 10-1, at 10). In Reply, [Rillema] correctly points out that both versions contain the same language regarding arbitration and that [Harvey] "acknowledges that [Rillema] attached the proper agreement to the pending motion." (Doc. 12, at 2).

Nowhere in his Complaint or opposition brief does [Harvey] argue there was any fraud specific to the arbitration clause. It is "settled law that unless there is a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause to agree to inclusion of that clause in the contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause." *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1138 (6th Cir. 1991) (citing *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14 (1974)). The same is true specifically with regard to arbitration clauses. *See Prima Paint v. Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1963) ("[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.").

Essentially, a party must specifically allege fraud in the inducement of the arbitration provision of an agreement before there can be judicial review of the entire agreement in the first instance. *See Burden v. Check Into Cash of Kentucky, LLC*, 267 F.3d 483, 491 (6th Cir. 2001) ("[F]or a complaint of fraud in the inducement to survive Prima Paint, the complaint must contain 'a well-founded claim of fraud in the inducement of the arbitration clause itself, standing apart from the whole agreement, that would provide grounds for the revocation of the agreement to arbitrate.'") (quoting *Arnold v. The Arnold Corp.*, 920 F.2d 1269, 1278 (6th Cir. 1990) (emphasis in Arnold)); *see also DetailxPerts Franchise Sys., LLC v. TKTM Enterprises, LLC*, 2018 WL 5885503, at *2-3 (E.D. Mich.) ("Coyne claims that the entire Franchise Agreement is invalid due to fraud in the inducement. Specifically, Coyne alleges that DetailXPerts made material misrepresentations, omissions, and false statements in connection with the Franchise Agreement; nowhere in his counterclaim does Coyne assert that DetailXPerts engaged in fraud with respect to the arbitration provision. Given the above, Coyne's counterclaim must be dismissed.")

[Harvey] has made no such allegation or showing specific to the arbitration clause. Moreover, both parties rely on the same version of the Operating Agreement for purposes of the instant motion. The Court therefore finds that there is no genuine dispute regarding the validity of the arbitration clause.

(*Harvey*, N.D. Ohio, No. 23-1209, ECF No. 15, PageID #: 305-308.)

This Court likewise finds that there is no genuine dispute regarding the validity of the arbitration clause. No party has indicated to this Court that the arbitration provision was fraudulently induced, nor is there any dispute that the arbitration provision is identical in all Operating

Agreements proffered by the parties. The Court thus turns to the scope

of the arbitration provision itself.

As set forth above, the Operating Agreement provides that:

Any dispute, controversy or claim arising out of or in
connection with this Agreement or any breach or alleged
breach hereof shall, upon the request of any party involved,
be submitted to, and settled by, arbitration in the city in
which the principal place of business of the Company is then
located, pursuant to the commercial arbitration rules then in
effect of the American Arbitration Association[.]

(ECF No. 2-3, at ¶13). As Judge Knepp stated,

"An arbitration clause containing the phrase 'any claim or
controversy arising out of or relating to this agreement' is
considered the paradigm of a broad arbitration clause. Such a
clause generally requires arbitration of all claims touching
matters covered by the agreement." *Verizon Advanced Data,
Inc. v. Frognet, Inc.*, 2006 WL 2373265, at *3 (S.D. Ohio); *see
also Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498 (6th
Cir. 2007) (holding arbitration clause in a Purchase and Sales
Agreement (PSA) for water resources underneath the owners'
land that "govern[ed] any controversy 'arising out of' the PSA
was 'extremely broad' ") (quoting *Cincinnati Gas & Elec. Co.
v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983)).

(*Harvey*, N.D. of Ohio, No. 23-1709, ECF No. 15, PageID #: 308.)

This Court also finds that the arbitration provision in the Operating

Agreement contains expansive language: "Any dispute, controversy or

claim arising out of or in connection with this Agreement or any breach

or alleged breach hereof . . . ." (ECF No. 2, Ex. 2 at ¶13.) The claims

Harvey alleged in the Northern District of Ohio case, and the issues that
Rillema seeks to have arbitrated, relate to alleged mismanagement of the
Company, its funds, and specific violations of the Operating Agreement
by both Rillema and Harvey. Those disputes clearly "aris[e] out of or in
connection with [the Operating] Agreement . . . ."

The Court notes that Harvey has not offered any reason that his
claims or the matters raised by Rillema in this case are not encompassed
by the language of the arbitration provision. In his omnibus motion,
Harvey "move[d] this Court for an Order requiring [Rillema] to comply
with the Arbitration Clause in the Operating Agreement pursuant to the
Rules of AAA and alternatively, Compel Arbitration within 5 Days
pursuant to FAA §4 pursuant to AAA, and immediately proceed to trial
if necessary for clarification as required pursuant to FAA." (ECF No. 17,
PageID.451.) Harvey also asserts that the Court lacks jurisdiction
because AAA determines its own jurisdiction. (*Id.* at PageID.462.)
Harvey further contends that Rillema waived his right to arbitration –
and this Court lacks jurisdiction to decide the motion to compel
arbitration, because Rillema failed to adhere to the AAA rules adopted

by the Operating Agreement when he did not "file a demand only with AAA." (*See, e.g., id.* at PageID.455, 462.)

The Court finds that, when considering the totality of Harvey's arguments and filings, Harvey concurs that this matter should be arbitrated. Harvey mistakenly believes, however, that the parties have agreed to have an arbitrator decide the issue of arbitrability. Citing *Henry Schein v. Archer & White Sales, Inc.*, — U.S. —, 139 S. Ct. 524, 529 (2019) ("parties may agree to have an arbitrator decide ... gateway questions of arbitrability"). The Arbitration provision of the Operating Agreement, however, does not provide for an arbitrator to determine arbitrability and applies only to "[a]ny dispute, controversy or claim arising out of or in connection with this Agreement or any breach or alleged breach [t]hereof . . . ." In addition, contrary to Harvey's interpretation, pursuant to the Arbitration provision, a party is not "required to file a demand only with AAA." The Arbitration provision provides only that:

> Any dispute, controversy or claim . . . shall upon the request of any party involved, be submitted to, and settled by, arbitration . . . **pursuant to the commercial arbitration rules then in effect of the American Arbitration Association** . . . .

11

Case 2:23-cv-12042-JJCG-APP  ECF No. 21, PageID.502  Filed 09/11/23  Page 12 of 15

Based on the expansive language in the arbitration clause (*i.e.,* "[a]ny dispute, controversy or claim arising out of or in connection with this Agreement or any breach or alleged breach hereof"), the Court finds all matters alleged by Harvey or asserted by Rillema come within the scope of the Arbitration provision. Accordingly, the Court concludes that all such matters are subject to resolution by arbitration, not by a court of law. The motion to compel arbitration is therefore **GRANTED**.

### B.    Omnibus motion

In his omnibus motion, Harvey seeks to strike Rillema's complaint and motion to compel arbitration, dissolve the TRO entered by the Court, answer the complaint Harvey seeks to strike, and requests a hearing. The Court notes that a party may not file an omnibus "motion" that answers a complaint and includes motions that seek other relief. A motion must be filed as a separate, freestanding document. *See, e.g.,* E.D. Mich. LR 5.1 (e) and 7.1(i); *Franklin v. Dometic Corp.,* 2010 WL 2342433, at *4 (E.D. Tenn. June 7, 2010).

In a typical case, the Court would strike the omnibus motion and require Harvey to refile each motion separately, as well as file a separate answer with affirmative defenses. In this case, however, the Court has

determined that the issues shall be arbitrated. Accordingly, the Court **DENIES AS MOOT** the omnibus motion.

### C. Motion for sanctions

Harvey begins his motion for sanctions by stating that he "hereby moves this Court for an Order to impose sanctions on [Rillema] for violations of FRCP RULE 11." (ECF No. 18, PageID.470.) Harvey, however, failed to comply with the "safe harbor" provision of Rule 11, which reads:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). **The motion must be served** under Rule 5, **but it must not be filed** or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected **within 21 days after service** or within another time the court sets.

Fed. R. Civ. P. 11(c)(2) (emphases added). *See also Ridder v. City of Springfield*, 109 F.3d 288, 294, 296 (6th Cir. 1997); *Jodway v. Orlans, PC*, 759 F. App'x 374, 384 (6th Cir. 2018); *Nieves v. City of Cleveland*, 153 F. App'x 349, 353 (6th Cir. 2005). Accordingly, the Court **STRIKES** the motion for sanctions.

### III. CONCLUSION

For the reasons stated,

IT IS ORDERED that the motion to compel arbitration (ECF No. 2) is GRANTED.

IT IS FURTHER ORDERED that former Third Judicial Circuit Court Judge DAVID GRONER is APPOINTED AS ARBITRATOR.

IT IS FURTHER ORDERED that the omnibus motion (ECF No. 17) is DENIED AS MOOT.

IT IS FURTHER ORDERED that the motion for sanctions (ECF No. 18) is STRICKEN from the docket.

IT IS FURTHER ORDERED that the judicial proceedings in this matter are STAYED until such arbitration has been completed.

IT IS FUTHER ORDERED that this case is ADMINISTRATIVELY CLOSED.

SO ORDERED.

Date: September 11, 2023            s/Jonathan J.C. Grey
                                    Hon. Jonathan J.C. Grey
                                    United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 11, 2023.

<u>s/ **S. Osorio**</u>
Sandra Osorio
Case Manager