# EXHIBIT 1

## PURCHASE CONTRACT

The undersigned, **522 REYNOLDS, LLC**, a Michigan limited liability company,  or its heirs or assigns, with an address of 100 W. Big Beaver Rd., Troy, MI (hereinafter referred to as "Purchaser"), hereby offers and agrees to purchase from **SOUTH REYNOLDS PLAZA, LLC**, an Ohio limited liability company, with an address of 6725 W. Central Ave., Unit U, Toledo, Ohio 43617 (hereinafter referred to as "Seller"), and Seller hereby agrees to sell to Purchaser the following described property located at 522-550 S. Reynolds Rd., Toledo, Lucas County, Ohio, together with all buildings and improvements located thereon, and including easements, hereditaments, fixtures and appurtences belonging thereunto, but subject to all legal highways as more particularly legally described on Exhibit "A" attached hereto (such land and buildings collectively referred to as the "Property").  The purchase and sale will be upon the following terms and conditions:

1. ***Purchase Price and Payment, Deposit***.  The purchase price ("Purchase Price") for the Property shall be One Million Eight Hundred Fifty Thousand Dollars ($1,850,000.00), payable as follows:

     (a)     The sum of Fifty Thousand Dollars ($50,000.00) ("the Deposit") upon the full execution of this Contract to be deposited with Title Company (as defined below); and

     (b)     The balance of the Purchase Price shall be paid in cash at closing.

2. ***Conditions and Contingencies***.  This Contract, and all of Purchaser's obligations hereunder, are expressly subject to and conditioned upon the satisfaction of all of the following conditions within thirty (30) days of the execution and delivery of this Contract by Seller to Purchaser ("Due Diligence Period"):

     (a)     The delivery to Purchaser at Purchaser's cost of a survey ("Survey") of the Property hereof acceptable to Purchaser and showing no encroachments and otherwise meeting American Land Title Association standards (Seller agrees to deliver to Purchaser a copy of any existing surveys of the Property upon execution hereof).  Purchaser shall pay for any survey costs if he desires additional survey updates or certifications;

     (b)     Determination to Purchaser's satisfaction that noncontaminated conditions exist at the Property and that the Property is free from hazardous substances and environmental

concerns.  Seller shall furnish to Purchaser upon execution hereof a copy of any existing Phase I or other such reports presently in its possession on the Property.  Purchaser shall pay for any additional environmental reports or updates;

(c)     Purchaser obtaining financing to cover the acquisition of the Property upon terms and conditions acceptable to Purchaser (Purchaser is purchasing cash);

(d)     Purchaser's determination that title to the Property is as required under numbered paragraph three (3) hereof and that the Property is properly zoned for its current uses;

(e)     Review and approval of all leases presently affecting the Property and the terms thereof ("Leases"), copies of which together with tenant ledgers shall be provided to Purchaser upon execution hereof; all of the Leases shall be assigned to Purchaser at closing;

(f)     Purchaser's review and approval of all proforma financial statements relating to expenses, charges and other financial information relative to the operation of the Property; Seller agrees to prepare and furnish upon execution hereof to Purchaser all such necessary financial information in order to assist Purchaser in satisfying this condition.

3.     *Evidence of Title.*  Within three (3) days of the execution hereof, and as evidence of Seller having marketable title to the Property, Seller shall deliver to Purchaser a Commitment for Owners' Title Insurance from Midland Title Agency, Inc., in Toledo, Ohio ("Title Company"), which at closing shall have deleted from it exceptions for survey and mechanic's liens, in an amount equal to the Purchase Price ("Commitment"), evidencing that Seller holds marketable title in fee simple to the Property, free and clear from all defects, liens and encumbrances whatsoever except for:

(a)     Zoning ordinances;

(b)     Easements, agreements and restrictions of record which would not materially affect Purchaser's use of the Property as a retail center; and

(c)     Real estate taxes and assessment installments due and payable after the closing date.

4. **Taxes and Assessments.** Seller shall pay all the real estate taxes and assessment installments due and payable as of the date of closing. All non-delinquent real estate taxes and assessment installments due and payable on the date next following the closing shall not be prorated between the parties hereto because Purchaser shall receive at closing an appropriate prorate to date of closing of all net-net-net charges collected for real estate taxes under the Leases by Seller for that period.

5. **Closing, Delivery of Deed and Possession.** The closing of the purchase of the Property shall be held as soon as possible after the satisfaction of all the contingencies to this Contract and when the tenants on the Property have begun paying rent, but in no event later than February 15, 2019. Possession of the Property shall be at Closing, subject to all approved tenancies. At Closing, Seller shall convey to Purchaser marketable title to the Property by transferring all membership interests in Seller to Purchaser, subject only to the use and other restrictions referred to herein. Seller shall also deliver or cause to be executed and delivered an assignment of the Leases on the Property. Seller shall also execute and deliver at closing such other documents prepared at Purchaser's expense, as Purchaser's legal counsel deems reasonably necessary to complete this transaction. Included in this sale is all the right title and interest of the Seller in and to any land lying in the bed of any public street, road or avenue opened or proposed and in front of or adjoining the Property. Said conveyance shall be free and clear of all liens and encumbrances whatsoever except the following:

(a)     Zoning ordinances;

(b)     Building and use restrictions of record; and

(c)     Current taxes and assessments, both general and special, which as stated below shall not be prorated at closing as set forth herein.

6. **Costs.** Seller shall pay for that portion of the title policy attributable to a guaranteed certificate (there shall be no conveyance fee). Rents shall be prorated at closing and all security deposits on the Leases shall be paid to Purchaser or credited at closing against the purchase price. The purchase

is cash.  The parties shall split any closing costs charged by the Title Company who shall act as escrow agent at Closing.

7.     *Realtor's Commission.* Purchaser and Seller represent to one another that no real estate salesperson or broker has brought about or been involved in the negotiation of this Contract.

8.     *Breach.*  In the event Purchaser fails to complete this transaction for any reason not occasioned by the default or inability of Seller to perform, Seller's shall be entitled to declare a forfeiture and retain all sums deposited by Purchaser hereunder or enforce this Contract through all remedies then available.  In the event that Seller fails to perform, Purchaser may terminate this Contract and receive back the Deposit or enforce this Contract by specific performance and/or sue for damages.

9.     *Return of Deposit.*  If this Contract is canceled by Purchaser as a result of the failure of any of the contingencies set forth in Paragraph 2 hereof during the Due Diligence Period, the Deposit tendered hereunder shall be immediately directed to be refunded by Seller to Purchaser.

10.     *Entire Agreement and Non-Merger.*  All previous negotiations and agreements had between the parties hereto and their respective agents with respect to the transaction set forth herein are merged in this Contract.   This Contract fully sets forth all covenants, promises, agreements, conditions, warranties, representations and understandings between Purchaser and Seller.  Each of the parties hereto agree that this Contract cannot be modified, extended or changed in any respect whatsoever, whether by oral statements, payment of additional consideration or otherwise, except by an instrument in writing executed by the party to be charged.  All covenants, promises and understandings to be performed pursuant hereto shall survive the delivery of the deed and the consummation of the acquisition of the Property as provided for herein, and shall continue to remain in full force and effect and shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors and assigns.  This Contract may be freely assigned by Purchaser to an entity formed and owned solely by Purchaser.

4

ists charged by the Title Company who shall act as escrow

rchaser and Seller represent to one another that no real
ut or been involved in the negotiation of this Contract.
haser fails to complete this transaction for any reason not
r to perform, Seller's shall be entitled to declare a forfeiture
lereunder or enforce this Contract through all remedies then
perform, Purchaser may terminate this Contract and receive
specific performance and/or sue for damages.
Contract is canceled by Purchaser as a result of the failure of
raph 2 hereof during the Due Diligence Period, the Deposit
ected to be refunded by Seller to Purchaser.
ion-Merger. All previous negotiations and agreements had
active agents with respect to the transaction set forth herein
tract fully sets forth all covenants, promises, agreements,
I understand

cannot



11.   *Notices.*  All notices, including any notice by Purchaser of a failure of any condition of this Contract, as given hereunder by either party to the other shall be in writing and shall be deemed to have been delivered when delivered personally or when mailed, United States Certified Mail, return receipt requested, at or to the addresses of the parties indicated above.

12.   *Right of Entry.*  During the period of this Contract, Purchaser shall have the right at Purchaser's own peril and risk with no liability to be incurred by the Seller hereof to enter upon the Property for purposes of surveying, of making such inspections of the Property (non-invasive) as deemed necessary to determine its suitability for Purchaser's purposes; provided: (i) Purchaser shall conduct such studies and inspections in a manner not to interfere with Seller's on-going businesses at the Property; (ii) in the event Purchaser shall terminate this Contract as provided herein, Purchaser will restore the Property to substantially the same condition as exists on the date of this Contract to the extent such restoration is necessary due to Purchaser's act; and (iii) Purchaser shall indemnify and hold Seller and its contractors harmless from any and all claims, costs, demands or expenses resulting from such use of the Property by Purchaser.

13.   *Miscellaneous.*

(a)   Until closing hereunder, the risk of loss or damage or taking by eminent domain shall be borne by Seller;

(b)   Seller and Purchaser agree that either may elect to attempt to effectuate a §1031 tax-free exchange as a result of the purchase and sale of the Property hereunder, and both parties agree to cooperate with the other to accomplish same provided the cooperating party incurs no costs or liability in doing so;

(c)   Seller shall have three (3) days after the date of Purchaser's execution hereof to execute this Contract and deliver an executed copy thereof to Purchaser.  If not so executed and delivered (e-mail acceptable), Purchaser's execution hereof will be rendered null and void.

**IN WITNESS WHEREOF,** Purchaser and Seller have executed this Purchase Contract on the dates shown below.

**SELLER:**

SOUTH REYNOLDS PLAZA, LLC,
an Ohio limited liability company

By: _____
    Ramy D. Eidi, Manager

Dated: 2/4/19

**PURCHASER:**

522 REYNOLDS, LLC,
an Ohio limited liability company

By: _____
    Kurt Rillema, Member

Dated: 2/4/ 2019

## RECEIPT OF DEPOSIT

Midland Title Agency, Inc., acknowledges receipt of the Deposit from Purchaser in the amount of $50,000.00.

MIDLAND TITLE AGENCY, INC.

By: _____

Dated: _____

H:\JParker\Eidi-Eallah Group, LLC fka Woodland\Sale of 522-558 S Reynolds Rd., Toledo\Purchase Contract-2-4-19.doc

6