# Exhibit 3

## INDEPENDENT SALES REPRESENTATIVE AGREEMENT

This agreement ("Agreement") is entered into by and between PACE Energy Services, LLC ("Company") and Beau Harvey ("Rep") for the purpose of establishing the rights and duties of the parties with respect to the promotion, sale and distribution of PACE Energy Services and Products by Rep.

1. **Appointment of Rep; Authorized Territory.** Company hereby appoints Rep to act as an independent sales representative and sales manager, with the title of Vice President of Business Development, or in any further capacity as directed by Company to promote the sale of Company's related product, services, and all accessories and other related items ("Company Products"). Company authorizes Rep to sell PACE Services on behalf of company.

2. **Best Efforts by Rep; Conflict of Interest.**

    2.1  Rep shall devote substantially all of his time and best efforts to the promotion and sale of Company Products.

    2.2  Rep agrees not to carry any line of goods, either personally, or indirectly through his employees, agents or affiliated businesses, which in Company's sole opinion is competitive with, or adverse to, Company or the Company Products. Rep agrees to notify Company in writing if Rep agrees to represent any new manufacturer vendor during the term of this Agreement and to provide Company with a plan for maintaining an acceptable service level to Company's customers. Company shall be entitled to terminate this Agreement if it believes, in its sole discretion, that the addition of such new manufacturer will materially impact Rep's representation of Company.

3. **Covenant Not to Compete.**

    3.1  Period: 2 years from the termination of this agreement by either party.

    3.2  Scope: Rep agrees not to compete in the selling of any Pace related energy services or Pace related financial services. This shall include ownership, management, employment or independent representation with any business offering products or services in any Pace energy services or Pace financial services.

    3.3  Territory: Initial territory of the covenant not to compete shall include Michigan, Ohio, Illinois, Colorado, Texas and Kentucky. This territory can by expended at the sole discretion of the company if the company's operations expand into other territories.

1

4. **Compensation**

   4.1 Subject to the exceptions and exclusions described below, Rep will receive commissions according to the agreed commission schedule of up to 30% of net project margin of completed projects earned by the company through all projects in which rep directly initiates and sells, or as the Company and Rep may agree. If the rep doesn't initiate and manage the sale with the customer but provides some value-added input to the selling process with another primary sales person, the company and rep will agree on a lesser amount of commission to be paid on the project.

   4.2 Company reserves the right to pay a lower commission, determined in its sole discretion, on:
   (a) certain projects; and
   (b) trade customer volume purchases; and
   (c) support role only customer involvement such as on-site project management

   4.3 Rep shall receive a draw against commission of $5,000 per month for a period of up to 6 months.

   4.4 The amount of commissions attributable to the following sales will be deducted from commissions due Rep on later sales by means of a chargeback or true up against Rep's account:
   A. Any advance payments or draws;
   B. Sales resulting in non-payment;
   C. Discounts, credits, chargebacks or allowances granted or disputed by a customer where customer fails to comply with all terms of such discount program;
   D. The amount of customer payments actually returned to a customer as a preference in a bankruptcy proceeding

   Company shall have the right to debit Rep's commissions payable account (including final commission checks) for any such chargebacks, product sample account balances or any other monies due Company by Rep, whether or not such amounts arise under this Agreement or previous agreements between the parties. If no such commissions are due, Rep shall reimburse Company for commissions received on the above sales.

5. **Term; Termination.**

   5.1 This Agreement shall commence on April 1, 2018 ("Effective Date") and shall terminate on March 31, 2021, unless earlier terminated pursuant to Section 5.2.

   5.2 Either party upon thirty days (30) notice to the other party, may terminate this Agreement with or without cause or reason. Company shall not be liable to Rep for any loss of present or prospective profits on sales, investment or goodwill resulting from termination of this Agreement.

2



5.3 Upon termination of this Agreement, Rep shall receive commissions on projects completed as of the effective termination date. Un-finished projects will not be eligible for commission payments. The project must be 100% complete and accepted by the owner in writing to be eligible for commission. Company at its sole discretion may increase draw payments to rep based on potential future commission events but these payments will not be deemed commission until final project signoff by the owner and a subsequent commission earned trigger in this agreement. Company shall have sole discretion in accepting orders placed after notice of termination. Subsequent to termination, a withholding of 20% will be made on all commission payments to offset any future charge backs as described in Section 4.5.

5.4 Not later than ten (10) working days following termination of this Agreement, Rep agrees to return to Company all Company sales materials, Company customer lists, Company price lists, Company invoices, Company mailing lists, and all other documents, products or items in Rep's possession or control that relate to Company or the merchandising of Company Products (collectively "Company Property"). Rep agrees not to use, retain copies of, or disclose any of the Company Property to any third party. Rep agrees that his final commission check may be withheld until all Company Property has been returned.

5.5 Rep acknowledges that the non-disclosure provisions of Section 7.2 are applicable during the term of this Agreement and upon termination. Rep further agrees, upon termination of this Agreement, to refrain from making any disparaging statements about Company, its employees or its business.

5.6 In the event that this agreement is terminated pursuant to any provision contained herein, the remaining contribution expenses for the calendar year in which termination occurs, shall be paid by Company.

6. **Independent Contractor Status; Compliance with Law.**

    6.1 Rep acknowledges that he is an independent contractor and not an employee, partner or co-venturer of COMPANY or any of its subsidiaries or divisions. Subject to the terms of this Agreement, Rep shall have sole control over the manner and means of performance under this Agreement. Because Rep is not an employee of COMPANY, Rep shall not receive any "severance pay," "termination pay," "vacation pay" or any other employee benefit from COMPANY during the term of or upon termination of this Agreement. Rep agrees that s/he will pay all expenses incurred by him/her, his employees or agents in connection with the performance of services under this Agreement.

    6.2 Rep shall comply with all federal, state and local law, rules, regulations and reporting requirements. Rep shall perform services hereunder in a manner consistent with the highest standards of business

ethics. Rep shall be responsible for the withholding and/or payment of all taxes relating to services rendered hereunder, and all required employment insurance, unemployment compensation and worker's compensation insurance. Rep agrees to indemnify, defend and hold Pace Energy Services, LLC harmless for any loss, cost, expense or liability arising out of Rep's failure to comply with this Section 6.2.

6.3 The rights and obligations of Rep under this Agreement are personal and may not be assigned or delegated without Company's prior written consent, which may be withheld in its sole discretion.

7. **Intangible Rights of Company**

7.1 Rep acknowledges that Company is the exclusive owner or licensee of all trademarks, copyrights, patents, Trade Secrets and other intangible and intellectual property rights in and to the Company Products, including but not limited to, "PACE Energy Services" name and trademarks, the various product and model names, all designs, drawings and copy used in connection with Company Products, catalogs, advertisements and other marketing materials, whether created by Company or Rep (collectively "Intangible Rights"). In addition, Rep agrees that Company is the exclusive owner of all customer lists developed by Rep in connection with this Agreement. Rep acknowledges that in acting as an independent sales representative hereunder, he shall acquire no proprietary rights of any kind in and to the aforesaid Intangible Rights.

7.2 During the term of this Agreement, Rep may have access to various Company trade secrets or confidential information, which is defined as information that is generally not known to the public and, as a result, is of economic benefit to Company in the conduct of its business. This includes any ideas, plans, procedures, methods, techniques, processes, designs, specifications, strategies, new product ideas, customer and vendor name, commission structure/bonuses, sales history, market share, company profitability, banking arrangements, financial projections, cost and pricing information, and other similar engineering, design, business and financial information, whether or not reduced to writing (collectively "Confidential Information"). All Confidential Information, including those developed by Rep, are the sole property of Company. Rep agrees to hold all such Confidential Information in strict confidence, not to disclose it to others or use it in any way, commercially or otherwise, except in performing the Services, and not to allow any unauthorized person access to it, either before or after expiration or termination of this Agreement. Rep further agrees to take all action reasonably necessary and satisfactory to protect the confidentiality of the Confidential Information including, without limitation, implementing and enforcing operating procedures to minimize the possibility of unauthorized use or copying of the Confidential Information. This provision shall survive the expiration of this Agreement.

7.3 *Moral Rights Waiver.* "*Moral Rights*" means any right to claim authorship of a work, any right to object to any distortion or other modification of a work, and any similar right, existing under the law of any country in the world, or under any treaty. Rep hereby irrevocably transfers and assigns to Company any and all Moral Rights that Rep may have in any Services, or Designs and Materials. Rep also hereby forever waives and agrees never to assert against Company, its successors or licensees any and all Moral Rights Rep may have in any Services or Designs and Materials, even after expiration or termination of this Agreement. This provision shall survive the expiration of this Agreement.

8. **Limitation of Liability.** IN NO EVENT SHALL COMPANY BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES OF ANY KIND IN CONNECTION WITH THIS AGREEMENT, EVEN IF COMPANY HAS BEEN INFORMED IN ADVANCE OF THE POSSIBILITY OF SUCH DAMAGES.

9. **Governing Law.** This Agreement, and all transactions contemplated hereby, shall be governed by, construed and enforced in accordance with the laws of the State of Michigan. The parties hereto waive trial by jury and agree to settle any disputes exclusively through binding arbitration administered by the American Arbitration Association in accordance with its Commercial [or other] Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

10. **Miscellaneous.** This Agreement contains the entire agreement between the parties and supersedes all prior agreements, discussions and understandings. Any representation, promise or condition not incorporated herein shall not be binding upon either party. Any change to the Agreement shall be in writing, signed by both parties. No waiver of any term of this Agreement shall be deemed to have been made unless expressed in writing and signed by both parties.

11. **Representations and Acknowledgements.** Rep affirms that the only consideration for signing this Agreement is the terms stated herein; that no other promises or agreements of any kind have been made to or with Rep by any person or entity whatsoever to cause employee to sign this Agreement. Rep agrees that he has carefully read this Agreement, knows the contents hereof, has had an opportunity to consult with counsel and to negotiate the terms of this Agreement, understands the final and binding effect of this Agreement, and signs the same as his own free act.

12. **Notices and Correspondences.** Any notice given under this Agreement shall be in writing and shall be delivered in person, by mail, email or telecopy addressed as follows

    Pace Energy Services, LLC:
    ADDRESS: 100 W. Big Beaver
         Troy, MI 48083
    ATTN: Kurt Rillema
    TEL: (248) 961-3500
    EMAIL: kurt@paceenergyservices.com

    REP: Beau Harvey
    ADDRESS: 8130 Timothy Lane, Sylvania, OH 43560
    PHONE&FAX: 419-705-0922
    EMAIL: bmharvey@paceenergyservices.com

Notices delivered personally shall be deemed received as of the date of actual receipt. Mailed notices shall be deemed received three (3) days after the postmark date. Telecopied emailed notices shall be deemed received on the date sent.

IN WITNESS WHEREOF, the parties have executed this Agreement on the 1st day of April, 2018 to become effective April 1, 2018 ("Effective Date").

"Company"              "Rep"
PACE Energy Services, LLC        Beau Harvey

By: _/s/ Kurt Rillema_           By: /s Beau Harvey
Kurt A. Rillema
President

6